IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TYQUEZ URSERY, | ) |
| | ) NO. 3:22-cv-00776 |
| v. | ) |
| | ) JUDGE CAMPBELL |
| UNITED STATES OF AMERICA | ) |

**MEMORANDUM**

Pending before the Court are Petitioner Tyquez Ursery's Motion and Amended Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (Doc. Nos. 1, 3). Although Petitioner filed the motion and amended motion *pro se*, he did so with the assistance of his former defense counsel. Recognizing that some of Petitioner's claims would present a conflict of interest for his former attorney, Petitioner requested appointment of counsel, which the Court granted. (*See* Doc. No. 6). The Government filed a response to the motion and amended motion. (Doc. No. 11). Petitioner, through appointed counsel, filed a reply (Doc. No. 18), and following the Supreme Court's decision in *Erlinger v. United States*, 602 U.S. 821 (2024), filed a supplemental brief (Doc. No. 20), to which the United States responded (Doc. No. 24).

For the reasons set forth herein, Petitioner's Motion is **DENIED**.

**I.     BACKGROUND**

On April 8, 2019, Petitioner pleaded guilty to the sole count in the indictment – felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924.[1] (*See* Trans. of Plea Hearing, CR Doc. No. 73; Indictment, CR Doc. No. 1). Prior to sentencing, the United States Probation Office authored a Presentence Investigation Report ("PSR"), which determined that

---

[1] Petitioner's underlying criminal case is United States v. Ursery, Case No. 3:18-cr-00050 (M.D. Tenn. Mar. 7, 2018). All citations to the underlying criminal record are to "CR Doc. No. __."

Petitioner qualified for sentencing enhancement under the Armed Career Criminal Act, 18 U.S.C. § 924(e) (the "ACCA"). (PSR, CR Doc. No. 71 at ¶ 21). The ACCA requires a mandatory minimum sentence for any person who has been convicted of being a felon in possession of a firearm and who has three previous convictions for violent felonies or serious drug offenses that were "committed on occasions different from one another." 18 U.S.C. § 924(e). The PSR identified the following predicate convictions:

  a) On October 29, 2013, Ursery was sentenced in Davidson County Criminal Court, Nashville Tennessee, for a conviction for Facilitation of Attempted Especially Aggravated Robbery (2012-A-156).

  b) October 29, 2013, Ursery was sentenced in Davidson County Criminal Court, Nashville, Tennessee, for a conviction for Facilitation of Especially Aggravated Robbery (2012-B-1402).

  c) On March 3, 2016, Ursery was sentenced in Davidson County Criminal Court, Nashville, Tennessee, for convictions for Aggravated Burglary (2015-C-1631).

(PSR, CR Doc. No. 71 at ¶ 21).

Although Petitioner was arrested and sentenced for the two robbery convictions on the same dates – November 3, 2011 (arrested), and October 29, 2012 (sentenced) – the convictions were for robberies that took place on separate dates – September 28, 2011, and October 16, 2011 – at separate locations, and had separate victims. (*See* CR Doc. No. 65-1, 65-2; PSR CR Doc. No. 71 at ¶¶ 29-30). The aggravated burglary conviction was committed on January 4, 2014. (PSR, CR Doc. No. 71 at ¶¶ 32).

As relevant here, Petitioner objected to his classification as an Armed Career Criminal, arguing that his facilitation convictions are not ACCA predicate offenses, and that they should not count as separate predicate offenses because "[t]he date of offense was not an element of the crime

2

that Mr. Ursery pleaded guilty to, and the government has not shown through acceptable documentation that the offenses were committed on separate occasions." (CR Doc. No. 63 at 6) (acknowledging contrary Sixth Circuit authority in *United States v. Hennessee*, 932 F.3d 437 (6th Cir. 2019)).[2] Petitioner asserted that without the ACCA enhancement, he would have an advisory sentencing guidelines range of 57-71 months, with a statutory maximum penalty of 10 years. (*Id*. at 7). With the ACCA enhancement, his Guidelines Range was 180-188 months. (PSR, CR Doc. No. 71 at 24).

The Court overruled Petitioner's objection related to the basis on which the Court could determine that the offenses were committed on separate occasions. (Sentencing Trans., CR Doc. No. 74 at 7). The Court found that the offenses occurred on separate occasions because the state conviction records showed that the predicate offenses occurred on dates 19 days apart. (*Id*.). The Court also ruled that under *United States v. Gloss*, 661 F.3d 317 (6th Cir. 2011), facilitation of especially aggravated robbery is a violent felony. (*Id*. at 8).

Having found the sentencing enhancement under the ACCA applied, the Court imposed the mandatory minimum sentence of 180 months incarceration, and supervised release of two years. (*See* Judgment, CR Doc. No. 68).

On appeal, Petitioner raised two arguments: first, he argued that the prior felonies were not ACCA predicate offenses; second, he argued that the two facilitation convictions should count as

---

[2]  Petitioner also argued his burglary convictions were not predicate offenses based on an argument that Tennessee aggravated burglary is not generic burglary. (Crim. Record, Doc. No. 63 at 3-6). At sentencing the Court overruled this objection based on the Sixth Circuit decision in *Brumbach v. United States*, 929 F.3d 791 (6th Cir. 2019), which held that Tennessee aggravated burglary convictions qualify as predicate offenses under the ACCA. (*See* Crim. Record Sentencing Trans., Doc. No. 74 at 7).

3

a single predicate because, even though they were committed on different dates (19 days apart), the date of the offenses was not an element of the crime. *See United States v. Ursery*, Case No. 20-5218 (6th Cir. Dec. 3, 2020) (docketed at CR Doc. No. 76). The Sixth Circuit rejected both arguments and affirmed the judgment. *Id*. The Supreme Court denied certiorari. (*See* CR Doc. No. 79).

Petitioner now seeks to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, arguing that his enhanced sentence under the ACCA was in error. (*See* Doc. No. 3).

## II. LEGAL STANDARD

Petitioner brings this action pursuant to 28 U.S.C. § 2255. Section 2255 provides a statutory mechanism for challenging the imposition of a federal sentence:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

In order to obtain relief under Section 2255, a petitioner "must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States,* 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2003)); *see also*, *Wright v. Jones*, 182 F.3d 458, 463 (6th Cir. 1999).

A Section 2255 motion is not a substitute for a direct appeal. *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). Consequently, as a general rule, any claims not raised on direct

4

appeal are procedurally defaulted and may not be raised on collateral review unless the movant shows "(1) 'cause' excusing [the] procedural default, and (2) 'actual prejudice' resulting from the errors," *United States v. Frady*, 456 U.S. 152, 168 (1982), or demonstrates that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted). A claim of ineffective assistance of counsel is not subject to the procedural-default rule. *Massaro v. United States*, 538 U.S. 500 (2003). An ineffective-assistance claim may be raised in a collateral proceeding under Section 2255, regardless of whether the movant could have raised the claim on direct appeal. *Id*.

If a factual dispute arises in a Section 2255 proceeding, the court is to hold an evidentiary hearing to resolve the dispute. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). An evidentiary hearing is not required, however, if the record conclusively shows that the petitioner is not entitled to relief. 28 U.S.C. § 2255(b); *Ray,* 721 F.3d at 761; *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999). Having reviewed the record in Petitioner's underlying criminal case, as well as the filings in this case, the Court finds it unnecessary to hold an evidentiary hearing because disposition of Petitioner's claims does not require the resolution of any factual dispute.

### III.  ANALYSIS

Petitioner now seeks to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, arguing that his enhanced sentence under the ACCA was in error. (*See* Doc. No. 3). As stated above, the ACCA requires a mandatory minimum sentence for any person who has been convicted of being a felon in possession of a firearm and who has three previous convictions for violent felonies or serious drug offenses that were "committed on occasions different from one another." 18 U.S.C. § 924(e). The ACCA defines "violent felony" as: "[A]ny crime punishable by

5

imprisonment for a term exceeding one year ... that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

Following Petitioner's sentencing and appeal, the Supreme Court has issued several opinions addressing a defendant's eligibility for enhanced sentencing under the ACCA that are directly relevant to these claims – *United States v. Taylor*, 596 U.S. 845, 850-52 (2022) (holding attempted Hobbs Act robbery is not a violent felony); *Wooden v. United States*, 595 U.S. 360 (2022) (discussing the factors to be considered to determine whether offenses were committed on separate occasions); and *Erlinger v. United States*, 602 U.S. 821 (2024) (holding that a defendant is entitled to have a jury determine beyond a reasonable doubt whether offenses were committed on separate occasions).

Petitioner now raises the following arguments: (1) the Court committed constitutional error by applying the ACCA enhancement in violation of the Fifth and Sixth Amendments; (2) the Court committed statutory error by applying an incorrect occasions test; (3) the Court committed constitutional and statutory error by determining that Petitioner's conviction for facilitation of attempted especially aggravated robbery was a predicate offense for purposes of the ACCA enhancement; and (4) defense counsel was ineffective at sentencing and on appeal for failing to raise each of these claims.

The Government argues none of Petitioner's asserted grounds for relief have merit.

## A. Fifth and Sixth Amendment

Petitioner argues the Court committed constitutional error because the Court, rather than a jury, made the determination that the predicate offenses were committed on occasions different from one another. Indeed, the Supreme Court has recently confirmed that Petitioner is correct. In *Erlinger*, 602 U.S. 821, the Supreme Court held that, under *Apprendi v. New Jersey*, 530 U.S.466 (2000), the question of whether predicate offenses occurred on separate occasions is a question of fact that must be determined by a unanimous jury beyond a reasonable doubt. *Id*. Petitioner argues his case is on all fours with *Erlinger* and that his sentence must therefore be vacated.

There is no dispute that *Erlinger*, which was decided after Petitioner's sentencing and appeal, makes clear that the different occasions inquiry must be decided by a jury (or conceded by the defendant). The question here is whether *Erlinger* requires Petitioner's sentence be vacated. The Government argues it does not for two reasons: first, because *Erlinger* announced a new rule of criminal procedure that does not apply retroactively on collateral review; and second, because any error was harmless. (Doc. No. 24). The Court agrees *Erlinger* is not retroactive.

"In *Teague v. Lane*, 489 U.S. 288 (1989), and subsequent cases, the Supreme Court explained the framework for determining when rules apply retroactively to final criminal judgments." *Duncan v. United States*, 552 F.3d 442, 444 (6th Cir. 2009). "Under *Teague*, an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases still on direct review." *Id*. (citing *Griffith v. Kentucky*, 479 U.S. 314 (1987)). "The *Teague* inquiry consists of three steps: (1) establishing the date that the defendant's conviction was final; (2) determining whether a court, at the time the defendant's conviction is final, would have felt compelled to hold that the rule the defendant now seeks to use was then required by the

7

Constitution; and if the rule is new (3) assessing whether the new rule falls within one of the two narrow *Teague* exceptions." *Regalado v. United States*, 334 F.3d 520, 527 n.8 (6th Cir. 2003) (citing *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994)).

"The first [*Teague*] exception is for new rules that place 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.'" *Id*. (citing *Teague*, 489 U.S. at 307). "The second exception is for 'watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.'" *Id*. (citing *Saffle v. Parks*, 494 U.S. 484, 488 (1990) (internal quotation marks omitted)).

The *Teague* inquiry easily leads to the conclusion that *Erlinger* announced a new rule of criminal procedure that is not retroactive. The rule is new because at the time Petitioner's conviction became final, trial courts routinely decided the question of whether a defendant's prior convictions satisfied the occasions inquiry of the ACCA. The rule announced does not fall within the first *Teague* exception, nor is it a "watershed rule of criminal procedure." As with other decisions based on *Apprendi*, the rule announced in *Erlinger* "merely 'allocate[d] decision making authority' by requiring a jury rather than a judge" to make certain factual determinations. *See Duncan v. United States*, 552 F.3d 442, 447 (6th Cir. 2009) (citing *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004)). As is regularly recognized, there is no indication that "juries [are] so much more accurate than judges such that the change brought about [by the new rule] 'implicated the fundamental fairness and accuracy of the criminal proceeding.'" *Id*. (quoting *Schriro*, 542 U.S. at 353)); *see also In re Mazzio*, 756 F.3d 487, 491 (6th Cir. 2014) (holding that *Alleyne* is not retroactive); *Goode*, 305 F.3d 382 (holding that *Apprendi* is not retroactive); *Delgado v. United States*, 334 F.3d 520, 527 (6th Cir. 2003) (*Apprendi* is not retroactive); *Humphress v. United States*,

8

398 U.S. F.3d 855, 863 (6th Cir. 2005) (*Booker* is not retroactive).

Because the rule announced in *Erlinger* is not retroactive on collateral review, Petitioner is not entitled to relief under Section 2255 on this basis.

**B.  Statutory Occasions Inquiry**

Petitioner next argues that, in light of *Wooden v. United States*, 595 U.S. 360 (2022), the Court erred as a factual matter by finding Petitioner committed the facilitation crimes on different occasions. (Doc. No. 3 at 12). In *Wooden*, the Supreme Court held that the different occasions clause requires application of a multi-factor test. 595 U.S. at 369. Specifically, the Court explained that

> a range of circumstances may be relevant to identifying episodes of criminal activity. Timing of course matters, though not in the split-second, elements-based way the Government proposes. Offenses committed close in time, in an uninterrupted course of conduct, will often count as part of one occasion; not so offenses separated by substantial gaps in time or significant intervening events. Proximity of location is also important; the further away crimes take place, the less likely they are components of the same criminal event. And the character and relationship of the offenses may make a difference: The more similar or intertwined the conduct giving rise to the offenses—the more, for example, they share a common scheme or purpose—the more apt they are to compose one occasion.

*Id*. The *Wooden* court stated that, "[f]or the most part, applying this approach will be straightforward and intuitive" because "[i]n many cases, a single factor—especially of time or place—can decisively differentiate occasions." *Id*. at 369-70. Consequently, courts "have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart, or at a 'significant distance.'" *Id*. at 370 (citing *United States. v. Rideout*, 3 F.3d 32, 35 (2d Cir. 1993). The *Wooden* court anticipated application of the multi-factor test would not involve extra-ordinary work, noting that "in law as in life, it is usually not so difficult to identify

9

an 'occasion.'" *Id*.

The predicate offenses in *Wooden* were markedly different than those here. Wooden burglarized ten storage units on a single night, in a single uninterrupted course of conduct, at one location. *Id*. at 370. Each offense was essentially identical, and "each burglary in some sense facilitated the next, as Wooden moved from unit to unit, all in a row." *Id*. at 371. The Court held that, for purposes of the ACCA, Wooden's burglary of the ten storage units was a single occasion. *Id*.

Petitioner argues that the Court should have applied the multi-factor test articulated in *Wooden* rather than relying solely on the date of the offense. He contends that if the Court had applied the multi-factor test it would have necessarily concluded that the two facilitation offenses were a single occasion.

The Government argues Petitioner's *Wooden*-based claim is procedurally defaulted because it could have been, but was not, raised during the underlying criminal case or on direct review; and Petitioner cannot demonstrate cause and prejudice or actual innocence to excuse the default.

Petitioner did not argue the Court applied an incorrect standard for the occasions inquiry before this Court or on direct appeal. Therefore, Petitioner cannot raise the claim here unless he can show cause and prejudice.[3] *Massaro*, 538 U.S. at 504 ("[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice.") (citing *United States v. Frady*, 456 U.S. 152, 167-168 (1982), and *Bousley v.*

---

[3] Procedurally defaulted claims also may be considered on collateral review if the petitioner establishes actual innocence. *Goward v. United States*, 569 F. Appx' 408, 411 (6th Cir. 2014). Petitioner does not claim actual innocence.

*United States*, 523 U.S. 614, 621–22 (1998)). "Cause exists if a claim 'is so novel that its legal basis [was] not reasonably available to counsel' during the original proceedings." *Mitchell v. United States*, 43 F.4th 608, 615 (6th Cir. 2022) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). "In other words, a claim is novel if, 'at the time of [the] default, the legal tools, *i.e.*, case law, necessary to conceive and argue the claim were not yet in existence and available to counsel.'" *Id*. (citing G*atewood v. United States*, 979 F.3d 391, 395 (6th Cir. 2020)). A claim raised by another defendant before the petitioner's proceeding is not novel as "the tools required to conceive it must have existed" by then. *Id*. Sometimes futility will establish good cause for failure to raise a claim. But "the futility exception does not apply to claims foreclosed by mere 'middle-management judge[s].'" *Id*. at 616 (quoting *Thomas More L. Ctr. v. Obama*, 651 F.3d 529, 553 (6th Cir. 2011) (Sutton, J., concurring in part)). Only when an argument is "squarely barred" by then-controlling Supreme Court precedent will futility provide good cause for failure to raise the claim on direct appeal. *Id*.

The argument was reasonably available to Petitioner at the time of his sentencing in February 2020. Indeed, the defendant in *Wooden* first raised his argument regarding the statutory interpretation of the occasions inquiry before the trial court in this circuit in February 2019 and before the Court of Appeals later that year. *See United States v. Wooden*, Case No. 3:15-cr-12, Transcript of Sentencing Hearing, Feb. 21, 2019, Docket Entry 93 (E.D. Tenn.); 945 F.3d 498, 504 (6th Cir. 2019); *reversed and remanded*, 595 U.S. 360 (2022).

Petitioner's argument that attorney error in failing to raise the claim can constitute cause to excuse procedural default is unavailing. (*See* Doc. No. 18 at 2). The cases relied upon are all in the context state habeas proceedings, and, even under those circumstances an attorney's failure to

11

Case 3:22-cv-00776    Document 25    Filed 11/01/24    Page 11 of 18 PageID #: 127

preserve an issue can constitute cause to excuse procedural default only when it rises of the level of constitutionally ineffective assistance of counsel, which is not the case here. *See infra* Section III., D.

Even if Petitioner could establish cause to excuse his procedural default, he was not prejudiced by the Court's reliance on the dates of the facilitation offenses to find that these offenses were committed on different occasions than one another because consideration of additional factors would not change the result. Petitioner's facilitation convictions took place 19 days apart and in different locations. Based on these facts alone the Government easily established that the convictions were for robberies committed on different occasions than one another. Defendant argues that the robbery offenses were committed on a single occasion because they shared a motive and modus operandi. But these similarities, which are common to many robberies, especially those involving drugs, does not suffice to merge the offenses into a single occasion for purposes of the ACCA.

Defendant also points to a decision from the Eight Circuit Court of Appeals remanding the case to the district court for "further consideration in light of *Wooden*," to suggest that failure to conduct the multi-factored occasions inquiry necessarily results in prejudice. (Doc. No. 18 at 3 (citing *United States v. Williams*, No. 19-2235, 2022 WL 1510779, at *1 (8th Cir. May 13, 2022)). But in a different direct appeal several months later, the Eight Circuit rejected the defendant's argument that his case should be similarly remanded because his underlying offenses occurred on separate days. *See United States v. Buford*, 54 F.4th 1066, 1068 (8th Cir. 2022) (finding that sales of substantially similar amount of cocaine to the same undercover officer during a ten-day period, with two of the sales on consecutive days constituted offenses on occasions different from one

12

another because "convictions for separate drug transactions on separate days qualify as multiple ACCA predicate offenses").

Defendant points to a post-*Wooden* decision by the District Court for the Western District of Tennessee holding that arson convictions committed on different days were committed on the same occasion because they occurred in the same general location and had the same motive. (Doc. No. 18 at 4) (citing *Harper v. United States*, No. 2:15-cv-02464, 2022 WL 2318505 (W.D. Tenn. Jun. 28, 2022)). *Harper* is unique in that there were ambiguities in the record with respect to the date or dates on which the offense occurred. *See* Gov't Br., at 3-4, *Harper* (Doc. No. 61) (W.D. Tenn. Jun. 6, 2022). Although he initially found that the offenses occurred on separate days, the district judge stated that it was "very hard for [the Court] to conclude that these offenses occurred on different dates." *Id*. In fact, the Government conceded that if the discrepancies in the record were resolved in favor of Harper, the offenses occurred on the same date. *Id*. On reconsideration after *Wooden*, the Government did not object to granting Harper's motion under 28 U.S.C. § 2255. *Harper*, 2022 WL 2318505, at *1.

Here, Petitioner's robbery offenses are more similar to those of the defendant in *Buford* (drug offenses committed 10 days apart) than the defendant in *Harper* (offenses committed the same day or, at most, one day apart). Because the undisputed facts show that Petitioner's prior convictions were committed on separate occasions, Petitioner cannot show that the Court's failure to conduct the multi-factor inquiry mandated by *Wooden* resulted in prejudice. Accordingly, this claim is barred by procedural default.

13

Case 3:22-cv-00776   Document 25   Filed 11/01/24   Page 13 of 18 PageID #: 129

**C. ACCA Predicate Offenses**

Petitioner next argues that his prior conviction for Tennessee facilitation of attempted especially aggravated robbery does not qualify as a "violent felony" under the ACCA after *United States v. Taylor*, 596 U.S. 845 (2022). The Government argues Petitioner has procedurally defaulted this claim. Defendant again argues that his attorney's error in failing to properly raise a *Taylor* claim excuses procedural default. As discussed above, *supra* Section III.B., an attorney's failure to preserve an issue can constitute cause to excuse procedural default only when it rises of the level of constitutionally ineffective assistance of counsel, which is not the case here. *See infra*, Section III.D.

However, even if Petitioner could show cause to excuse procedural default, he cannot show prejudice because Tennessee facilitation of attempted especially aggravated robbery qualifies as a predicate offense under the ACCA even after *Taylor*.

The ACCA requires a mandatory minimum sentence for any person who has been convicted of being a felon in possession of a firearm and who has three previous convictions for violent felonies or serious drug offenses that were "committed on occasions different from one another." 18 U.S.C. § 924(e). The ACCA defines "violent felony" as: "[A]ny crime punishable by imprisonment for a term exceeding one year ... that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

The parties agree that only the elements clause is applicable here. (*See* Doc. No. 3 at 15; Doc. No. 11 at 14). Accordingly, the conviction for facilitation of attempted especially aggravated

14

robbery is a violent felony for purposes of the ACCA enhancement only if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). To decide whether the offense satisfies this clause, the Court uses the "categorical approach." *United States v. Havis*, 927 F.3d 382, 384 (6th Cir. 2019) (en banc). The Court "do[es] not consider the actual conduct that led to [the] conviction under the Tennessee statute at issue; instead [the Court] look[s] to the least of the acts criminalized by the elements of that statute." *Id*. (italics in original). "[I]f the least culpable conduct falls outside" the elements clause, "then the statute is too broad to qualify." *Id*.

In *Taylor*, the Supreme Court held that attempted Hobbs Act robbery does not satisfy the elements clause because that offense does not "ha[ve] as an element the use, attempted use, or threatened use of physical force." 596 U.S. at 850-52. This was because Hobbs Act robbery can be committed by "merely threatening, rather than necessarily using force" and an attempt can be committed by completing a "substantial step" toward that end. *Id*. at 850-51 (citing 18 U.S.C. § 1951(b) and *United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007)). Under federal law, a substantial step need not be violent. *Id*. at 851. But not all attempt crimes fall outside the elements clause. For example, Tennessee attempted second-degree murder constitutes a crime of violence.[4] *See United States v. Parham*, No. 24-5025, __ F4th __, 2024 WL 4511825, at *5 (6th Cir. Oct. 17, 2024). The Sixth Circuit held that a substantial step toward the commission of second-degree murder necessitates threatened use of force or an attempted use of force and is, therefore, a "crime

---

[4] *Parham* considered whether the offense was a "crime of violence" under the Sentencing Guidelines. The Guidelines definition mirrors the definition of "crime of violence" under the ACCA, and is interpreted in the same way. *See Parham*, 2024 WL 4511825 at * 4.

of violence." *Id*. This is because, unlike Hobbs Act robbery, which can be committed by "merely threatening, rather than necessarily using force," second-degree murder cannot be committed by the mere threat of force. *Id*.

The underlying crime at issue here – facilitation of especially aggravated robbery – also necessarily involves a use of force. *See United States v. Gloss*, 661 F.3d 317, 319 (6th Cir. 2011). In *Gloss*, the Sixth Circuit explained that facilitation for aggravated robbery, which requires that a defendant "(1) knowingly provided substantial assistance to another (2) whom he knew intended to steal property from a victim by using a real or disguised weapon or by causing serious injury," satisfies the elements clause of the ACCA because "it necessarily involves 'the use, attempted use, or threatened use of physical force against the person of another.'" 661 F.3d 317, 319 (6th Cir. 2011) (citing 18 U.S.C. § 924(e)(2)(B)(i)). Concerning the facilitation aspect of the conviction, the Court noted that "[a] conviction for criminal facilitation in Tennessee 'requires that [the underlying crime] actually occur." *Id*. (citing *United States v. Sawyers*, 409 F.3d 732, 738 (6th Cir. 2005)). The Court stated that "it makes no difference that the defendant was not the person who committed the aggravated robbery." *Id*. (citing *United States v. Brown*, 550 F.3d 724, 729 (8th Cir. 2008)). "All that matters is that someone did so, and that the defendant knowingly provided substantial assistance to that person." *Id*.

Here, the underlying substantive offense of especially aggravated robbery differs from aggravated robbery only in that it requires use of a deadly weapon and that the victim suffers serious bodily injury. *See* Tenn Code Ann. §§ 39-13-401, 403. At sentencing and on appeal, this court and the Court of Appeals rejected Petitioner's argument that facilitation of attempted especially aggravated burglary is a predicate offense for purposes of the ACCA enhancement

16

based on the Sixth Circuit's decision in *Gloss*.

The Supreme Court's decision in *Taylor* does not affect this result. As explained in *Parham*, this is because the underlying crime requires more than a mere threat of force. In *Parham*, the Sixth Circuit reasoned that while attempted second degree murder did not require death resulting, a substantial step toward second degree murder necessarily entails threatened or attempted use of force. *Parham*, 2024 WL 4511825 at * 5. The same is true here. Especially aggravated robbery requires the use of a deadly weapon and that the victim suffer a serious bodily injury. For the same reason that a substantial step toward second degree murder necessitates threatened or attempted use of force, so to does attempted especially aggravated robbery. Adding facilitation does not affect the result because the Sixth Circuit's holding in *Gloss* states that it does not matter whether the defendant threatened or attempted to use force against the person of another, only that *someone* did. Therefore, facilitation of attempted especially aggravated robbery is a crime that "has as an element the use, attempted use, or threatened use of physical force" and is a qualifying predicate offense under the ACCA.

**D. Ineffective Assistance of Counsel**

Petitioner argues defense counsel was ineffective for failing to raise the issues that the litigants in *Wooden* and *Taylor* raised.

To prevail on an ineffective assistance of counsel claim, the burden is on the petitioner to show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) actual prejudice resulted from the deficient performance. *Strickland v. Washington*, 466 U.S. 668 (1984); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004). "The benchmark for judging any claim of ineffectiveness must be whether counsel's

conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 669; *Ludwig v. United States*, 162 F.3d 456, 458 (6th Cir. 1998). In analyzing trial counsel's performance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Attorneys do not perform deficiently in failing to raise non-meritorious claims. *See Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("[B]y definition … counsel cannot be ineffective for a failure to raise an issue that lacks merit."). In order to establish prejudice, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. at 669.

Here, counsel was not constitutionally deficient because, as explained above, Petitioner cannot show prejudice from the Court's failure to use the multi-factor occasions test articulated in *Wooden*, and his *Taylor*-based argument lacked merit.

## IV. CONCLUSION

For the reasons stated, Petitioner's Motion and Amended Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (Doc. Nos. 1, 3) will be **DENIED** and **DISMISSED**.

An Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE